**Nathaniel D. LOLLIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–06–00199–CR.**

Court of Appeals of Texas, Texarkana.

Submitted July 20, 2007.

Decided Aug. 10, 2007.

---

L. Charles Van Cleef, Van Cleef Law Office, PC, Longview, for appellant.

Michael Morrow, Asst. County Atty., Richard Glaser, Fannin County Dist. Atty., Bonham, for appellee.

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

In the course of essentially weekly counseling sessions occurring over a period of approximately three and one-half months during the middle of 2006, three-year-old A.T. told licensed professional counselor Reba Clark that Nathaniel D. Lollis "hurt her," "touched her in the private parts of her body," "broke her arm," and "mushed her like a nake [sic]" (the last act apparently accomplished with his foot). During those sessions, A.T.'s two older brothers, C.T. and J.J.T., also made comments to Clark that they, too, had received abuse from Lollis. Lollis pled guilty to intentionally or knowingly causing serious bodily injury to A.T. by hitting her head with his hand and kicking her abdomen with his foot, an assault that occurred in September 2005. This appeal arises out of the punishment phase of trial at which a Fannin County jury made a deadly weapon finding—that, during the assault on A.T., Lollis used or exhibited a deadly weapon (his foot)—and assessed Lollis' punishment at ninety-nine years' imprisonment. In two points of error, Lollis asserts the trial court erred in admitting Clark's testimony recounting the outcry statements of A.T. and her two brothers, notwithstanding the children's failure to testify or otherwise be available to be cross-examined, and in not granting a mistrial after A.T.'s maternal grandmother testified that A.T.'s mother was given drugs by Lollis.

We affirm the trial court's judgment because we hold (1) the children's statements to Clark were nontestimonial, and (2) the trial court did not abuse its discretion in denying a mistrial.

### (1) The Children's Statements to Clark Were Nontestimonial

█ Lollis claims that the children's hearsay statements to Clark were admitted in violation of his constitutional right to confront the children. Testimonial hearsay statements of a person who does not appear at a defendant's trial are inadmissible unless that person was unavailable to testify and the defendant had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

Faced with a *Crawford* challenge,[1] we must determine whether the statements at

---

1. The State asserts Lollis failed to preserve *Crawford* error by not objecting as promptly as he could have. We disagree. Before the hearsay from each of the three children was recounted by Clark, Lollis made timely and clear objections. Lollis also obtained from the trial court a continuing objection to such testimony as to each of the three children. The issue was preserved.

issue are testimonial or nontestimonial in nature. *Id.; Zuliani v. State,* 97 S.W.3d 589, 595 (Tex.Crim.App.2003). We review *Crawford* issues de novo. *Wall v. State,* 184 S.W.3d 730, 742 (Tex.Crim.App.2006); *Delapaz v. State,* 229 S.W.3d 795, 798 (Tex. App.-Eastland 2007, no pet.); *see Lilly v. Virginia,* 527 U.S. 116, 137, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999). Our determination whether a statement is "testimonial" uses the standard of an objectively reasonable declarant standing in the shoes of the actual declarant. *Wall,* 184 S.W.3d at 742–43.

The Confrontation Clause of the United States Constitution applies to witnesses who "bear testimony," that is "typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" *Crawford,* 541 U.S. at 51, 124 S.Ct. 1354. Although the *Crawford* opinion does not provide a comprehensive definition of "testimonial," it does indicate that the term covers "ex parte in-court testimony or its functional equivalent ... extrajudicial statements contained in formalized testimonial materials" such as "prior testimony at a preliminary hearing, before a grand jury, or at former trial; and ... police interrogations." *Id.* at 52,

124 S.Ct. 1354. The timing, purpose, and setting of a challenged statement can be relevant considerations when determining whether the statement's primary purpose is testimonial. *See Davis v. Washington,* —— U.S. ——, 126 S.Ct. 2266, 2273, 165 L.Ed.2d 224 (2006).

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Id.* While it is clear that nonemergency police interrogations of normal adults ordinarily[2] produce testimonial statements, the appropriate test when classifying statements such as have been challenged here—statements made by young children, not in response to police interrogation—is less clear.[3]

---

**2.** Some situations may not be properly characterized as "emergency" situations, but can produce statements which, due to the immediacy or riskiness of the situation, are not deemed testimonial. *See Vinson v. State,* 221 S.W.3d 256, 267 (Tex.App.-Houston [1st Dist.] 2006, pet. granted) (statements while police sorted out domestic violence situation, in presence of victim and assailant).

**3.** While we recognize that the United States Supreme Court has not yet set out a comprehensive test for whether a statement is testimonial, the test applied by *Davis*—i.e., the principal purpose of the interrogation—appears to be both limited to an actual interrogation and subject to inherent ambiguity in analysis. *See Davis,* 126 S.Ct. at 2280 (Thomas, J., concurring in part and dissenting in part) (pointing out ambiguity in standard).

An interrogation does not have a purpose except for the purposes assigned to it by the participants. Each participant may have a different purpose or even multiple purposes, and it may prove very difficult to deduce the primary purpose of the interrogation. While a court should be able to determine a primary purpose for any particular participant, deducing the overall primary purpose of the interrogation is fraught with challenges. Regardless, the phrase was repeatedly used in *Davis. See id.* at 2273–74. Fortunately, the case before us does not require us to resolve that standard. In this opinion, we intentionally use the phrase "the primary purpose of the statement" to maintain that ambiguity created by the United States Supreme Court, while hoping to further the dialogue.

A discernible pattern has developed in cases evaluating statements made not in actual police interrogations, but in a variety of other situations, involving potentially mixed motivations, that, when a forensic or investigatory motive predominates, the resulting statements are testimonial; when therapeutic or healing motive predominates, statements are not testimonial. *See, e.g., United States v. Peneaux,* 432 F.3d 882, 896 (8th Cir.2005) (child victim's statements to treating physician and to foster parent paid by State not testimonial; absence of forensic interview noted); *State v. Vaught,* 268 Neb. 316, 682 N.W.2d 284, 291–92 (2004) (statement not testimonial when made to physician rendering medical services, not investigating). *Compare State v. Snowden,* 385 Md. 64, 867 A.2d 314, 330 (2005) (statement testimonial when made to social worker working with police in focused effort to obtain statement; therapeutic motivation present but subordinate to investigatory motivation).

Various factors have been used in determining whether the primary purpose of a statement was to get or give testimony or to accomplish some other purpose. The following factors are illustrative of the inquiry, but not exhaustive:

(A) whether the statement was made in a formal and structured setting;[4]

(B) the purpose of the interrogator;[5]

(C) whether the statement was spontaneous (e.g., "plea for assistance") or elicited by others;[6]

(D) whether the police or the declarant initiated the conversation;[7]

(E) the sophistication and maturity of the declarant;[8]

(F) whether the declarant was a victim or an observer;[9]

(G) whether the statement was made to a uniformed police officer, a governmental agent, or a friend or acquaintance;[10]

---

**4.** "We do not dispute that formality is indeed essential to testimonial utterance." *Davis,* 126 S.Ct. at 2278. *Crawford* gives some importance to the formal nature or quality of the interaction during which the challenged statement is uttered. The United States Supreme Court held "the principal evil at which the confrontation clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused." *Crawford,* 541 U.S. at 50, 124 S.Ct. 1354. The Court analyzed historical ex parte examination practices and the original intent of the Confrontation Clause. As the United States Supreme Court emphasized, the Confrontation Clause "is a procedural rather than a substantive guarantee." *Id.* at 61, 124 S.Ct. 1354. Thus, if the nature of the interaction possesses a sufficiently formal quality such that it is the functional equivalent of ex parte in-court testimony, the statement is testimonial. *See also State v. Scacchetti,* 711 N.W.2d 508, 516 (Minn.2006).

**5.** *Scacchetti,* 711 N.W.2d at 516; *see Franklin v. State,* No. SC04–1267, 965 So.2d 79, 98–99, 2007 WL 1774414, at *23, 2007 Fla. LEXIS

1107, at *70 (Fla. June 21, 2007) (Cantero, J., concurring); *United States v. Gardinier,* 65 M.J. 60 (C.A.A.F.2007).

**6.** *Lagunas v. State,* 187 S.W.3d 503, 517 (Tex. App.-Austin 2005, no pet.); *see Franklin,* 965 So.2d at 98–99, 2007 WL 1774414, at *23, 2007 Fla. LEXIS 1107, at *70; *Gardinier,* 65 M.J. at 60; *Ruth v. State,* 167 S.W.3d 560, 568–70 (Tex.App.-Houston [14th Dist.] 2005, pet ref'd). We note the United States Supreme Court has held the same analysis applies to statements that are volunteered rather than those elicited by interrogation. *Davis,* 126 S.Ct. at 2284.

**7.** *Scacchetti,* 711 N.W.2d at 516; *Ruth,* 167 S.W.3d at 569.

**8.** *See Lagunas,* 187 S.W.3d at 517 ("a reasonable 51–year–old declarant like Ford would have known her accusations made to a uniformed police officer would be passed on to the prosecutorial authorities to be used against appellant").

**9.** *See Scacchetti,* 711 N.W.2d at 516.

(H) the degree to which law enforcement was involved in obtaining the statement;[11]

(I) whether the statement involved more than a routine and objective cataloging of unambiguous factual matters;[12] and

(J) where the statements were made (i.e., the declarant's house, a squad car, or the police station).[13]

There is no evidence that the statements challenged by Lollis were made in any formal setting or that Clark was actually asking questions that elicited the statements. Nothing suggests that Clark engaged in any structured questioning or investigation such as police officers or detectives tend to do after an emergency ceases. While evidence suggests that Clark likely initiated the conversations, Clark testified that her purpose was therapeutic, that is, treatment of the children, not the perpetuation of testimony. The three children made their statements to Clark in the context of counseling over approximately three and one-half months of approximately weekly counseling sessions. The children were unsophisticated and immature, and each was a victim within the context of the statement each made. Here, the statements were made by very young children—A.T. was three years old, and her brothers were five and seven, respectively—to Clark, a licensed professional counselor and family therapist, in the course of treatment to deal with behavioral problems and abuse issues. While one could portray Clark as an agent of government, she practices as a sole proprietor and independent contractor, not as an employee of any agency. Her obligations were to provide treatment to the children. She approached her counseling subjects to put them at ease and to befriend them, in other words, to play the role of a friend rather than an imposing governmental figure. Clark accomplished that counseling by using art activities (including their drawing pictures and using figures), play therapy, the reading of books to or with the children, and various activities to make the children feel comfortable and express their feelings. No evidence suggested that law enforcement was involved in obtaining the statements. No evidence showed where the statements were made, but the evidence suggests it was in a comfortable environment; one statement was made while on a sofa. *But see People v. Vigil,* 104 P.3d 258, 262–63 (Colo.Ct.App.2004) (child's videotaped statement to officer, although in relaxed setting, testimonial). Clark specifically connected the outcry statements to the children's treatment.

The evidence suggests that Clark's regular counseling sessions with these three children were intended primarily as therapy to assist the children in recovering from abusive experiences. The alternative reading—that the sessions constituted a

---

**10.** *See Franklin,* 965 So.2d at 98–99, 2007 WL 1774414, at \*23, 2007 Fla. LEXIS 1107, at \*70; *Lagunas,* 187 S.W.3d at 517.

**11.** *See Lagunas,* 187 S.W.3d at 518. Many different degrees of connection to the State are possible. For example, one can list roles performed by people to whom statements might be made, ranging from likely to produce a testimonial statement to unlikely to produce such a statement: police officers or other law enforcement officers or investigators, Child Protective Services investigators, sexual assault nurse examiners, 9–1–1 operators, mental or physical health practitioners, and friends and family of the declarant. *See, e.g., Wilson v. State,* 195 S.W.3d 193, 203 (Tex.App.-San Antonio 2006, no pet.) (excited utterance to father, in presence of officer, not testimonial).

**12.** *See Gardinier,* 65 M.J. at 60.

**13.** *See id.* at 60.

long and single-minded effort by the State to obtain hearsay testimony—seems strained and is contrary to the evidence. We conclude, as apparently did the trial court, that, from the standpoint of either Clark or the State, this relationship was primarily one of counseling rather than one of trial preparation. Also, there is no evidence that, from the perspective of the children, the ongoing relationship with Clark was anything but counseling. And that is the proper perspective from which we view the context of the statements. *See Wall*, 184 S.W.3d at 742–43.

These statements were made in a context analogous to that involved in a recent case decided by our sister court of appeals in Eastland, in which a very young child made outcry statements to a social worker and hospital staff member concerning abuse. *See Delapaz*, 229 S.W.3d at 798 (statements nontestimonial). A young child's statements made to her father shortly after a murder were held nontestimonial. *See Wilson*, 195 S.W.3d at 203. On the other hand, statements by young children can be testimonial if given in response to investigatory questions from an officer or investigator. *See Rangel v. State*, 199 S.W.3d 523, 532–37 (Tex.App.-Fort Worth 2006, pet. granted) (questioning of four year old by Child Protective Services investigator; testimonial); *see also Morrison v. State*, No. 2–05–443–CR, 2007 WL 614143, at *4, 2007 Tex.App. LEXIS 1529, at *14–15 (Tex.App.-Fort Worth Mar. 1, 2007, no pet.) (mem. op., not designated for publication) (young child's spontaneous utterances of sexual assault to sexual assault nurse examiner during course of sexual assault medical examination held nontestimonial).

In arguing that the three children's statements to Clark were testimonial, Lollis relies on two principal facts: State referrals of counseling cases to Clark ac-count for a large percentage of her income, and there was no emergency at the time the children made their statements to Clark. Our analysis leads us to conclude that those facts are not controlling here and that the children's statements to Clark were nontestimonial.

*Clark's State Connections.* The evidence showed that the Texas Department of Child Protective Services (CPS) referred A.T. to Clark for counseling and that Clark received seventy percent of her cases from CPS referrals, earning fifty percent of her income from such referrals. While those facts could be considered by a fact-finder in determining the purpose or purposes involved in Clark's sessions with the children, those facts alone should not control. The factor controlling whether a statement is testimonial is not whether it was uttered to, or even solicited by, a state agent, of whatever sort, but whether the primary purpose was to get or give testimony or its functional equivalent. *See Davis*, 126 S.Ct. at 2273; *Crawford*, 541 U.S. at 51, 124 S.Ct. 1354. While Clark contracts with CPS regularly and CPS referrals figure significantly into her income, that does not suggest that the primary purpose of the children's statements to her was testimonial.

*Lack of Emergency.* The absence of an emergency has been a telling factor in post-*Crawford* cases dealing with statements elicited by police interrogations. When police officers interrogate someone, under circumstances suggesting no pending emergency or danger, the cases have found those interrogations to be conducted pursuant to the investigative purposes of the police. *See Davis*, 126 S.Ct. at 2273; *Davis v. State*, 203 S.W.3d 845, 849 (Tex. Crim.App.2006); *Mason v. State*, 225 S.W.3d 902 (Tex.App.-Dallas 2007, no pet.); *Lagunas*, 187 S.W.3d at 517. Here, Clark was not acting as a police officer, and her

counseling with the children was not the functional equivalent of police interrogation. And, while no emergency factored into the statements, the absence of an emergency does not, alone, make the statements testimonial.

The children's statements to Clark were nontestimonial and, thus, did not violate Lollis' right of confrontation.[14] We overrule this point of error.

### (2) The Trial Court Did Not Abuse Its Discretion in Denying a Mistrial

■ Lollis also argues that the trial court erred in failing to grant his motion for a mistrial during the testimony of Woodine Strawn, A.T.'s maternal grandmother. The State asked Strawn various reasons why she disapproved of Lollis, who had a relationship with her daughter and grandchildren. Strawn responded that, on one occasion, her daughter came home "high" and told Strawn she had been with Lollis. The trial court sustained a hearsay objection and instructed the jury to disregard the witness' statement about what some other person said. When the State then asked Strawn what happened next, she recounted that she had then had an argument with her daughter and that the daughter had reported that Lollis had given her some drugs. Lollis' objection based on hearsay and lack of personal knowledge was sustained, but his motion for a mistrial was denied. Lollis then asked for an instruction to disregard, and the trial court instructed the jury to disregard Strawn's last statement.

■■ We review a trial court's denial of a mistrial under an abuse of discretion standard. *Trevino v. State*, 991 S.W.2d 849, 851 (Tex.Crim.App.1999). Mistrial is an extreme remedy for prejudicial events occurring during trial. *Bauder v. State*, 921 S.W.2d 696, 698 (Tex.Crim.App.1996). A grant of a motion for mistrial should be reserved for those rare cases in which an objection could not have prevented, and an instruction to disregard could not cure, the prejudice stemming from an event at trial, that is, where an instruction would not enable the jury to continue the trial fairly. *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim.App.2004).

> An error in asking an improper question or in admitting improper testimony may be generally cured or rendered harmless by a withdrawal of such testimony and an instruction to disregard the same except in extreme cases where it appears that the question or evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds.

*Lopez v. State*, 630 S.W.2d 936, 938 (Tex. Crim.App.1982) (quoting *Carey v. State*, 537 S.W.2d 757, 759 (Tex.Crim.App.1976)); *see Furtick v. State*, 592 S.W.2d 616 (Tex. Crim.App.1980).

Strawn's statement was brief and was not specifically solicited by the State. As requested by Lollis, the trial court instructed the jury to disregard it. We see no reason why that response did not take care of the problem. We do not find this statement to be such that an instruction to

---

**14.** Nontestimonial statements may still be governed by *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). *See Walter v. State,* 209 S.W.3d 722, 729 (Tex.App.-Texarkana 2006, pet. granted); *Wiggins v. State,* 152 S.W.3d 656, 659–60 (Tex.App.-Texarkana 2004, pet. ref'd); *see also Davis v. State,* 169 S.W.3d 660, 668 (Tex.App.-Austin 2005), *aff'd,* 203 S.W.3d 845 (Tex.Crim.App. 2006) ("The *Roberts* line of cases seem to be alive and well as to nontestimonial hearsay."). Because Lollis does not argue this point beyond the *Crawford* issues, we need not address any impact *Roberts* might have had on this case.

disregard would be ineffectual. The trial court did not abuse its discretion by overruling the *motion for a mistrial*. We overrule this point of error.

We affirm the trial court's judgment.