In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00014-CR

                                                ______________________________

 

 

                               LISA OVERSTREET MASSEY,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                     On Appeal from the County
Court at Law No. One

                                                           Angelina County, Texas

                                                           Trial
Court No. 10-0641

 

                                                       
                                           

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                     MEMORANDUM  OPINION

 

            Lisa
Overstreet Massey appeals her conviction by a jury for driving while
intoxicated (DWI).[1]  Officer Jimmy Marble, of the Huntington
Police Department, and Trooper Brian Henry, of the Texas Department of Public
Safety (DPS), were dispatched to investigate a one-vehicle accident.  When Marble arrived, he observed a white SUV
facing south in the ditch on the northbound side of the road.  Massey admitted to being the driver.  The State alleged Massey did not have normal
use of her mental and physical faculties by reason of the introduction of
carisoprodol (commonly prescribed under the brand name as Soma)—a drug which
had been prescribed to Massey.  The jury
found Massey guilty and the trial court assessed punishment at 180 days’ confinement.  The trial court suspended the sentence and
placed Massey on one year of community supervision.  

            Massey
raises four issues on appeal.  First,
Massey contends the evidence is insufficient to support the jury’s
verdict.  Second, Massey argues the trial
court erred in overruling her objection to the State’s chemist testifying about
the psychological effects of carisoprodol. 
Third, Massey alleges the trial court erred in denying her motion for a
mistrial when the State’s chemist testified hydrocodone had been detected in
Massey’s blood.  Finally, Massey claims
the trial court abused its discretion in denying her motion for new trial.

The Evidence Is Sufficient

            In her first issue, Massey argues
the evidence is legally insufficient. 
According to Massey, the State failed to prove she was driving on a
public road and failed to prove the introduction of alcohol, drugs, or a
combination thereof caused Massey’s loss of use of physical or mental
faculties.  Massey argues that her
condition was caused by a head injury sustained during the accident.

            In
evaluating sufficiency of the evidence, we review all the evidence in the light
most favorable to the verdict to determine whether any rational jury could have
found the essential elements of DWI beyond a reasonable doubt.  Brooks
v. State, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing Jackson v. Virginia, 443 U.S. 307, 319
(1979)).  Our rigorous legal sufficiency
review focuses on the quality of the evidence presented.  Brooks,
323 S.W.3d at 917 (Cochran, J., concurring).  We examine legal sufficiency under the
direction of the Brooks opinion,
while giving deference to the responsibility of the jury “to fairly resolve
conflicts in testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts.” 
Hooper v. State, 214 S.W.3d 9,
13 (Tex. Crim. App. 2007) (citing Jackson,
443 U.S. at 318–19).  When reviewing the
sufficiency of the evidence, we must evaluate all of the evidence in the
record, both direct and circumstantial, whether admissible or
inadmissible.  Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); see Neal v. State, 256 S.W.3d 264, 277
(Tex. Crim. App. 2008).  

            The
State introduced sufficient evidence for a rational juror to conclude Massey
committed the offense while driving on a public road.  Marble testified the roadway was a “gravel
road,” but was a “Huntington City street” and was a public place.  The jury could make a reasonable deduction
that a road, described as a city street and as a “public place,” was a public
road.  

            The
State also introduced sufficient evidence that Massey did not have normal use
of her physical and mental faculties by reason of the introduction of a
drug.  Marble testified that Massey’s
speech was slurred, she had difficulty staying awake, and she failed several
field sobriety tests.  During the one-legged-stand
test, Massey was unable to hold her foot up longer than two or three seconds,
used her arms for balance, and failed to count aloud as instructed.  During the walk-and-turn test, Massey failed
to walk a straight line, took ten steps instead of the instructed nine, failed
to walk heel-to-toe, used her arms for balance, and was stumbling.  The horizontal gaze nystagmus test was
administered, but neither officer recorded the results.  

            The
State introduced some evidence Massey’s condition was not caused by a head
injury.  Marble testified he did not
observe any injury to Massey’s head. 
Trooper Henry also testified that he “never suspected any kind of
injury, did not see any injury.”  Massey
refused medical attention.  Marble
testified he did not observe anything unusual when examining Massey’s pupils
during the horizontal gaze nystagmus test.[2]  The two officers agreed Massey was
intoxicated, arrested her for DWI, and obtained consent for a blood sample to
be taken.  

            At
trial, Eduardo Padilla, a chemist with the DPS Crime Laboratory, testified he
analyzed the blood sample and detected the presence of carisoprodol and
meprobamate.[3]  Padilla testified the concentration of
carisoprodol was 10 mg/L and the concentration of meprobamate was 27 mg/L.  Padilla testified the concentration of
carisoprodol, which can be prescribed under the brand name Soma, exceeded
therapeutic levels.  The concentration of
carisoprodol in Massey’s blood was 10 mg/L, while the therapeutic level is 2–6
mg/L.  When asked whether any other drugs
were identified, Padilla testified that a small amount of hydrocodone had been
discovered.  When the State asked Padilla
“what a person would expect the effect of taking that medicine to be,” Massey objected
and challenged Padilla’s qualifications. 
Following a brief voir dire outside the presence of the jury, the trial
court found Padilla to be qualified as an expert witness.  Padilla testified that carisoprodol causes
drowsiness, dizziness, slurred speech, slurred vision, and lack of motor
coordination.  

            We
note that there is contrary evidence that Massey’s condition may have been due
to injuries sustained in the accident. 
Massey testified she has been taking carisoprodol for six years.  Because she was having back muscle spasms on
the day in question, Massey testified she took one carisoprodol in the morning
before work and another after work approximately around 5:00 p.m.  Massey testified, due to previous mercury
poisoning, she was being closely monitored by her doctor.  Massey testified she was taking her
medication as prescribed, had met with her doctor the day before the accident,
and was taking the same dosage she had always taken.  Around 9:00 p.m., Massey left home to go to a
store to get cigarettes.  Massey
testified she swerved to avoid hitting a dog, hit a pothole, lost control, and
veered into a ditch.  Massey testified
she hit her head on her windshield.  Massey
introduced pictures of the head injury, including dried blood.  Massey testified that the head injury made
her confused and that she had difficulty recalling the events of that
evening.  Officer Marble testified there
was “egg-shaped” damage to the windshield of the car where Massey “hit her
head.”[4]  Trooper Henry admitted a head injury could
affect a person’s “coordination ability,” including the ability to perform
field sobriety tests.  

            While
we may not have reached the same decision as the jury, we are unable to
conclude a rational juror could not find Massey guilty beyond a reasonable
doubt.  The weight and credibility of the
evidence is the sole province of the jury—we will not substitute our judgment
for that of the jury.  See Brooks, 323 S.W.3d at 901–02.  The evidence is sufficient.

Any Error in Permitting the Chemist to Testify on the Effects of Soma
Is Not Preserved 

            Massey, in her
second issue, complains that the trial court erred in overruling her objection
to the State’s expert concerning the “psychological effects of soma
(carisoprodol).”  Padilla testified he
had a bachelor of science degree in biochemistry and had worked as a chemist
for ten years.  Padilla also testified he
had completed an introductory graduate course in toxicology offered online by
the University of Florida.  Over
objection, Padilla testified as follows:

            Q.        [State]  You’re familiar with the psychological effects
of carisoprodol?

            A.        [Padilla]  Yes.

            Q.        What would those psychological effect[s]
be?

            A.        Like I described earlier, it is a CMS
depressant just like alcohol, so you could see those effects like drowsiness
and dizziness, slurred speech, slurred vision and lack of motor coordination.

            Q.        Would confusion and disorientation be
some of them, too?

            A.        . . . . Yes.

 

Immediately before this
testimony, the trial court had overruled, outside the presence of the jury, a
defense objection to Padilla’s qualifications. 


            The
Texas Rules of Evidence provide, “[i]f scientific, technical, or other
specialized knowledge will assist the trier of fact to understand the evidence
or to determine a fact in issue, a witness qualified as an expert by knowledge,
skill, experience, training, or education may testify thereto in the form of an
opinion or otherwise.”  Tex. R. Evid. 702.  In determining whether to admit an expert
witness, the trial court must inquire whether:  (1) the witness qualifies as an expert by
reason of his knowledge, skill, experience, training, or education; (2) the
subject matter of the testimony is an appropriate one for expert testimony; and
(3) admitting the expert testimony will actually assist the fact-finder in
deciding the case.  Rodgers v. State, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006).  

            The
trial court’s decision to admit expert testimony is reviewed for abuse of discretion.  Alvarado
v. State, 912 S.W.2d 199, 216 (Tex. Crim. App. 1995).  The decision will be upheld unless it is
outside the zone of reasonable disagreement. 
Layton v. State, 280 S.W.3d
235, 240 (Tex. Crim. App. 2009). 
“Qualification is distinct from reliability and relevance and,
therefore, should be evaluated independently.” 
Vela v. State, 209 S.W.3d 128,
131 (Tex. Crim. App. 2006).  An expert
witness must have both a sufficient specialized knowledge in a particular
field, and that specialized knowledge “must be tailored to the specific area of
expertise in which the expert desires to testify.”  Id.
at 133; see Davis v. State, 329
S.W.3d 798, 813 (Tex. Crim. App. 2010).

            It
is not necessary, though, for us to decide whether Padilla was qualified to testify
concerning the effects of  carisoprodol
on a person.[5]  Prior to Massey’s objection, Padilla testified––without
objection—as follows:

            Q.        [State] 
What is Soma normally taken for?

            A.        [Padilla]  It is a muscle relaxer usually given for back
pain.

            Q.        If you categorized it, would it fall
into the category of a central nervous system depressant?

            A.        Yes.

            Q.        What does a central nervous system
depressant do?

            A.        It can produce effects like drowsiness
and dizziness and slurred speech, blurred vision, and a lack of motor
coordination.

 

If a defendant fails to object to
other evidence proving the same matters as the objected-to testimony,
reversible error has not occurred.  Leday v. State, 983 S.W.2d 713, 717
(Tex. Crim. App. 1998) (disapproving of term “curative admissibility,” but
noting disapproval “does not imply that the doctrine so named was unsound or
misapplied”); see Coble v. State, 330 S.W.3d 253, 282
(Tex. Crim. App. 2010).  The Texas Court
of Criminal Appeals has noted “overruling an objection to evidence after the
same evidence has been admitted without objection” will not be reversible
error.  Leday, 983 S.W.2d at 717.

            While
we note Padilla did not testify carisoprodol could cause “confusion and
disorientation” until after Massey’s objection, the objected-to testimony is
substantially similar to his previous testimony admitted without an
objection.  Even if the trial court erred
in overruling Massey’s objection, reversible error did not occur because
evidence that was substantially the same had been previously admitted without
objection.  The unobjected-to evidence
does not have to be identical to the objected-to evidence—it must merely be
“substantially the same.”  See Prieto v. State, No. 07-10-00225-CR,
2011 Tex. App. LEXIS 2606 (Tex. App.—Amarillo Apr. 7, 2011, pet. filed)
(quoting Mayes v. State, 816 S.W.2d
79, 88 (Tex. Crim. App. 1991)).  Because
substantially the same evidence was admitted without objection, reversible
error has not occurred.  Massey’s second
issue is overruled.

The Trial Court Did Not Err in Denying Massey’s Motion for a Mistrial

            In
her third issue, Massey argues the trial court erred in denying her motion for
a mistrial.  Padilla’s report indicated
he had detected the presence of two drugs—carisoprodol and meprobamate.  At trial, though, the State asked Padilla if
any other drugs were identified and Padilla testified, “[W]e also saw a very
small amount of hydrocodone . . . .”  Massey
immediately objected and requested a hearing outside the presence of the
jury.  Massey requested a mistrial
because hydrocodone had not been listed in Padilla’s report and the State had
not otherwise disclosed its detection.[6]  The trial court did not rule on the initial
objection,[7]
but explicitly denied the motion for a mistrial.  

            Although
Massey did initially object, Massey never secured a ruling on the
objection.  In addition, Massey did not
request an instruction to disregard.  The
only ruling the trial court made was to deny Massey’s motion for a
mistrial.  The Texas Court of Criminal
Appeals stated in Young v. State:

[W]hen a party’s first action is to move for
mistrial, as this appellant’s was, the scope of appellate review is limited to
the question whether the trial court erred in not taking the most serious
action of ending the trial; in other words, an event that could have been
prevented by timely objection or cured by instruction to the jury will not lead
an appellate court to reverse a judgment on an appeal by the party who did not
request these lesser remedies in the trial court.  Limited as this scope of appellate review may
be, such an appellate review is available to such a party.

 

137 S.W.3d 65, 70 (Tex. Crim.
App. 2004).  Because Massey failed to
secure a ruling on the initial objection, this case is the functional
equivalent of the situation in Young.  Therefore, the scope of our appellate review
is limited to whether the trial court erred in denying the motion for mistrial.

            The
granting of a mistrial is an extreme remedy. 
Brossette v. State, 99 S.W.3d
277, 282–83 (Tex. App.—Texarkana 2003, pet. dism’d, untimely filed).  A grant of a motion for mistrial should be
reserved for those rare cases in which neither an objection or an instruction
to disregard could have prevented or cured the error.  Young,
137 S.W.3d at 69.  This Court has noted
that an error in admitting improper testimony 

may be generally cured or rendered harmless by a
withdrawal of such testimony and an instruction to disregard the same except in
extreme cases where it appears that the question or evidence is clearly
calculated to inflame the minds of the jury and is of such character as to
suggest the impossibility of withdrawing the impression produced on their
minds.

 

Lollis v. State, 232 S.W.3d 803, 810 (Tex. App.—Texarkana 2007,
pet. ref’d) (challenge to admissibility of testimony).

            Assuming,
without deciding, that Padilla’s testimony was inadmissible, an instruction to
disregard would have been sufficient to cure the error.  Except in extreme cases where it appears that
the evidence is clearly calculated to inflame the minds of the jury and where
the conduct is of such a character as to suggest the impossibility of
withdrawing the impression produced on the jurors’ minds, a prompt instruction
to disregard will ordinarily cure any error. 
Ovalle v. State, 13 S.W.3d
774, 783 (Tex. Crim. App. 2000); Livingston
v. State, 739 S.W.2d 311 (Tex. Crim. App. 1987).  The testimony in this case is not
sufficiently inflammatory that an instruction to disregard would have prevented
a fair trial.  Because a prompt
instruction to disregard would have cured any error, the trial court did not
err in denying Massey’s motion for mistrial.

The Trial Court Did Not Abuse Its Discretion in Denying the Motion for
New Trial

            In
her remaining issue, Massey argues the trial court abused its discretion in
denying her motion for new trial.  Massey
filed a motion for new trial alleging newly discovered evidence alleging that Dr.
Alexander Orlov, Massey’s treating physician, could have “presented an opinion
that she was driving in accordance with his treatment and the Defendant would
not have been impaired at the levels recorded in the blood test.”[8]  The trial court held a hearing on the motion
for new trial.  Over the State’s objection,
Massey introduced business records[9]
consisting of a brief medical history and prescriptions.  The trial court denied Massey’s motion for
new trial.

            If
material evidence favorable to the accused has been discovered since trial, a
new trial shall be granted to an accused.  Tex.
Code Crim. Proc. Ann. art. 40.001 (West 2006).  We review the denial of a motion for new
trial for an abuse of that discretion.  Lewis v. State, 126 S.W.3d 572, 579
(Tex. App.—Texarkana 2004, pet. ref’d). 
A trial court does not abuse its discretion in denying a motion for new
trial unless the record demonstrates that (1) the newly discovered evidence was
unknown at the time of the trial; (2) the failure to discover the new evidence
was not due to a lack of diligence; (3) the new evidence is admissible and not
merely cumulative, corroborative, collateral, or impeaching; and (4) the new
evidence is probably true and will probably bring about a different result in a
new trial.  Id.; see Wallace v. State,
106 S.W.3d 103, 108 (Tex. Crim. App. 2003); Keeter
v. State, 74 S.W.3d 31, 36 (Tex. Crim. App. 2002); Moore v. State, 882 S.W.2d 844, 849 (Tex. Crim. App. 1994).  Massey failed to meet these requirements.

            “An
accused may not secure a new trial by failing to call a witness whose identity
is known, and whose knowledge of the case might have been known prior to trial
in the exercise of reasonable diligence.” 
Fuqua v. State, 457 S.W.2d
571, 572 (Tex. Crim. App. 1970).  Massey
failed to establish the evidence was unknown at the time of trial or the
failure to discover the evidence was not due to a lack of diligence.  Even if Dr. Orlov was unavailable to testify
personally, Massey could have called another medical doctor to provide
substantially equivalent testimony.  The
alleged “newly discovered” evidence could have been presented at trial with the
exercise of reasonable diligence.  In
addition, Massey failed to prove the evidence would probably bring about a
different result.  Massey testified at
trial that she was taking her medications as prescribed and the medications did
not affect her ability to drive.  The
trial court did not abuse its discretion in denying Massey’s motion for new
trial.

Conclusion

            The
evidence is sufficient to support the jury’s conclusion.  A rational juror could have concluded Massey
was guilty beyond a reasonable doubt. 
Massey failed to show reversible error occurred when the trial court
overruled her objection to Padilla’s qualifications to provide expert testimony
on the effect of carisoprodol.  Even if
the trial court erred, substantially the same evidence had previously been
introduced.  Because an instruction to
disregard would have cured any error in permitting Padilla to testify a small
amount of hydrocodone was detected, the trial court did not err in denying
Massey’s motion for mistrial.  Finally,
the trial court did not abuse its discretion in denying Massey’s motion for a
new trial because the alleged newly discovered evidence could have been
presented at trial with the exercise of reasonable diligence.  

            For the reasons stated, we affirm.

 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          May 27, 2011

Date Decided:             June 14, 2011

 

Do Not Publish











[1]Originally
appealed to the Twelfth Court of Appeals, this case was transferred to this
Court by the Texas Supreme Court pursuant to its docket equalization
efforts.  See Tex. Gov’t Code Ann. § 73.001
(Vernon 2005).  We are unaware of any
conflict between precedent of the Twelfth Court of Appeals and that of this
Court on any relevant issue.  See Tex. R. App. P. 41.3.





[2]Marble
testified a person who has suffered a severe head injury sometimes has one
pupil larger than the other. 

 





[3]A
person’s body converts carisoprodol into meprobamate.  





[4]Marble,
though, testified he did not observe any injury to Massey’s head.  





[5]This
opinion should not be relied upon as endorsing that an expert in one field can
testify concerning another field.  The
Texas Court of Criminal Appeals has emphasized the importance of the “‘fit’
requirement.”  Vela, 209 S.W.3d at 133.  We
do not express any opinion concerning whether one introductory graduate level
course taken online is enough to create sufficient specialized knowledge to
qualify as an expert.  We also do not
express any opinion concerning whether the specialized knowledge of Padilla,
whose specialized knowledge is primarily in chemistry, is a “fit” to the
specific area of expertise in this case—the effects of the drug on a person.  





[6]During
voir dire, Padilla testified the amount of hydrocodone was “below our
administrative cut off level.”  Padilla
was not asked to explain the justification for the administrative cutoff—e.g.,
whether the cutoff level was designed to prevent contamination from prior
tests, was due to the detection levels of the instrument, or was justified by
another reason.





[7]The
trial court also stated, “[S]ince the hydrocodone is below the administrative
level, there’s really no need to go into it.” 






[8]In
the affidavit attached to the motion for new trial, Dr. Orlov certified the
statements were “true and correct,” but did not swear to the affidavit before
an official authorized to administer oaths. 
See Tex. Gov’t Code Ann. § 602.002 (West Supp. 2010).  Dr. Orlov’s affidavit provided he “was not
available to testify for Lisa Massey previously as a result of unrelated legal
matters related to my doctor’s office.” 
We note the State argues Massey’s affidavit in support of her motion for
new trial was not sworn and, therefore, insufficient.  Because the trial court held a hearing on the
motion for new trial, it is not necessary for us to express an opinion
concerning whether the affidavits were sufficient to require the trial court to
hold a hearing.  Massey did not tender
the affidavit for admission into evidence during the hearing.

 





[9]Scott
Landers, medical assistant to Dr. Orlov, testified concerning the business
records and stated Dr. Orlov, who was under subpoena, was unavailable due to
“some other type of legal matte[r].”