Pamela Shareka LANGHAM,
Appellant,

v.

STATE of Texas, Appellee.

No. 11–07–00027–CR.

Court of Appeals of Texas,
Eastland.

Sept. 4, 2008.

Rehearing Overruled Sept. 25, 2008.

Stan Brown, Abilene, TX, for Appellant.

James Eidson, Dist. Atty., Patricia Dyer, Asst. Dist. Atty., Abilene, TX, for Appellee.

Panel consists of: WRIGHT, C.J., McCALL, J., and STRANGE, J.

## OPINION

JIM R. WRIGHT, Chief Justice.

The trial court found that Pamela Shareka Langham intentionally and knowingly possessed less than one gram of cocaine and assessed punishment at confinement in a state jail facility for eighteen months. The imposition of the sentence was suspended, and Langham was placed on community supervision for three years. We affirm.

In her first two issues on appeal, Langham challenges the legal and factual sufficiency of the evidence. In her third and final issue, Langham asserts that the trial court erred when it admitted, over her objection, certain hearsay evidence. Langham's theory is that the trial court's action in admitting the evidence resulted in a denial of her right of confrontation.

When we review a claim that the evidence is legally insufficient, we consider all of the evidence in the light most favorable to the verdict. We determine whether, based on that evidence and the reasonable inferences from it, any rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). When we perform a legal sufficiency review, we are not to substitute our judgment for that of the factfinder. *Dewberry v. State,* 4 S.W.3d 735, 740 (Tex.Crim.App.1999).

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light. *Watson v. State,* 204 S.W.3d 404, 414 (Tex. Crim.App.2006). We determine whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Id.* at 417. To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Id.* We may not simply substitute our judgment for that of the factfinder's. *Johnson v. State,* 23 S.W.3d 1, 12 (Tex.Crim.App. 2000). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because evaluation of credibility and demeanor is often involved in the resolution of any conflicts. *Id.* at 8. Therefore, in matters concerning the weight and credibility of the evidence, we must give due deference to the factfinder's determinations. *Id.* at 9. When conducting

a sufficiency review, we consider all the evidence admitted, whether properly or improperly. *Conner v. State,* 67 S.W.3d 192, 197 (Tex.Crim.App.2001).

A confidential informant had given Abilene Police Department Detective Rodney Smith information concerning a house at 5301 Encino in Abilene. Detective Smith conducted surveillance on the property to verify the information given to him by the confidential informant. He obtained a search warrant, and on August 3, 2005, police executed it at the Encino address. Langham was not specifically named in the search warrant, but she was described in it as a suspected party. The man with whom Langham lived at the Encino address, Charlie James Collins, was named in the warrant.

When the warrant was executed, police found Langham and Collins in one bedroom and another couple in the other bedroom. The residents were asked whether they wished to surrender anything, and Langham told them that she had a gun under the mattress in her bedroom. Langham had bought the gun for protection when she lived alone. She did not have a clip for it, but the police found ammunition in the bedroom that would fit the gun. Detective Smith testified that firearms are frequently involved in connection with drug dealing.

The police also found a safe under the bed in Langham's bedroom. Langham told the police that the safe belonged to Collins and her. The key to it was in the same bedroom, and the police opened the safe with it. The police found a white powdery substance (later test results showed the substance contained cocaine), a bag of coins, and $775 in cash in the safe. There were powder traces along the edges of the bills. Langham testified that she worked at Sonic. Three others who lived in the house worked. They all made mini-

mum wage. They gave part of their money to Langham who in turn put it in the safe. Langham had been in the safe the night before the warrant was issued.

The officers discovered a set of electronic scales in the kitchen. There was also a white powdery substance on the weighing part of the scales. Langham testified that she did the cooking for the people who lived there and that the scales were used in connection with her cooking duties.

The police also found a plate in the kitchen area; there was a single-edge razor blade just above the plate. Although Langham was the cook for the house, she recognized neither the plate nor the razor blade found in the kitchen. The State asked Detective Smith about the significance of finding the plate and the razor blade together. He testified that they were used to cut crack cocaine "from larger pieces into smaller pieces, and then the crack cocaine is sold in the smaller pieces on the streets for street prices." There was a powdery substance on the plate, and it field-tested positive for cocaine and was later confirmed by a chemist to contain cocaine.

Langham testified that she had not noticed any drugs in the house, had not seen drugs being cut with a razor blade, and had not seen the scales being used to measure drugs. She denied intentionally or knowingly possessing cocaine on the date of the alleged offense; she also denied that Collins was a drug dealer.

William Larry Todsen, a forensic scientist for the State of Texas, testified that the samples that he received tested positive for cocaine. The weight of the substance was about eight milligrams total and was mostly consumed in testing. He also agreed that a person might have those particles in a jacket pocket and not know that they were there.

Candy Applin, also a resident at the house, testified that she went to the house on Encino while the police were there. She did not really pay attention, but she thought that the scales were still in the original box.

Daniel Kilcrease and his wife also lived at the Encino address. Daniel had previous convictions for sexual assault and credit card abuse. He and his wife had lived at the Encino address for about one month before the warrant was executed. Kilcrease testified, in response to a subpoena from the State, that Langham had seen drugs being cut and sold out of the house and that Langham would make "runs for Charlie Collins."

Langham argues that the evidence is not sufficient, either legally or factually, to link her to the "infinitesimal" amount of cocaine on the plate and in the safe.

■ In a possession of a controlled substance case, the State is obligated to prove that the accused exercised control, management, or care over the substance and that the accused knew that the matter possessed was contraband. *Evans v. State*, 202 S.W.3d 158, 161 (Tex.Crim.App. 2006). The evidence must establish that the connection between the drug and the defendant was more than fortuitous. *Id.* at 162. Although this proposition had been known as the "affirmative links" rule, the *Evans* court announced that the word "affirmative" added nothing to the word "links" and that, in the future, it would be known as the "links" rule. *Evans*, 202 S.W.3d at 161–62 n. 9.

Also in *Evans*, the court acknowledged an opinion from the Fourteenth Court of Appeals in which the intermediate appellate court summarized a nonexclusive list of links that had been recognized as sufficient, alone or in combination with others, to show that a person possessed contraband. *Evans*, 202 S.W.3d at 162 n. 12. Those links are:

(1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Evans*, 202 S.W.3d at 162 n. 12 (citing *Evans v. State*, 185 S.W.3d 30, 35 (Tex. App.–San Antonio 2005, pet. granted) (citing *Olivarez v. State*, 171 S.W.3d 283, 291 (Tex.App.–Houston [14th Dist.] 2005, no pet.))). None of these factors are a litmus test but, rather, are some factors that might "circumstantially establish the legal sufficiency of the evidence to prove a knowing 'possession.'" *Evans*, 202 S.W.3d at 162 n. 12.

The officers found traces of a white powdery substance in a safe under the bed in Langham and Collins's bedroom. When the search warrant was executed, Langham was found in that same bedroom. She and Collins told the police that the safe belonged to them. The key to the safe was in the same bedroom. She had

been in the safe the night before the search warrant was executed. Of the six people who lived at the house, Langham was working at Sonic; three others were working at other minimum wage jobs. They all took part of the money they earned, and Langham put it in the safe. In addition to the powdery substance found in the safe, there was $775 in it.

The officers discovered a set of electronic scales in the kitchen. Langham bought the scales to assist her in her cooking chores. Detective Smith testified that the scales were of the type that were used to weigh small portions. Cocaine is typically distributed in grams. Traces of a powdery substance, like that on the plate, were located on the weighing part of the scales. The powdery substance in the safe and on the plate contained cocaine.

Langham was present when the search was conducted. The cocaine was found in places to which she had ready access: the kitchen area and a safe. The scales that were found were of the type used to weigh cocaine. Langham had a right to be in possession of the house where the cocaine was found in particular her bedroom where the safe and the gun were found as well as the place where she did the cooking for the rest of the people living in the house. There was testimony that she did know about the cutting and sale of cocaine at the house. Langham was in possession of a sizeable amount of cash for a household of six, only four of whom were working at minimum wage jobs.

It is not the number of links that is important, "but rather the logical force of all of the evidence, direct and circumstantial." *Evans*, 202 S.W.3d at 162. The only testimony that contradicted that testimony offered by the State came from Langham. Generally, the finder of fact is the sole judge of the credibility of the witness as well as the weight to be given to the testimony. It may choose to believe or disbelieve any part of a witness's testimony. *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex.Crim.App.1999); *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986). We presume the trier of fact resolved any conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim.App.1993).

We hold that under the well-known standards that we have set out above, there is legally and factually sufficient evidence to link Langham with the cocaine found in her house. Any rational juror could have found beyond a reasonable doubt that Langham exercised control, management, or care over the cocaine and that she knew that the matter possessed was cocaine. The first and second issues on appeal are overruled.

■ In her third issue, Langham asks: "Did the trial court err by admitting, over [Langham's] proper objections, hearsay evidence that denied [Langham's] right to confrontation?" We hold that it did not.

Detective Smith was allowed to testify, over Langham's objection, that he had received information from a confidential informant that persons living at 5301 Encino were operating a crack cocaine distribution business there. The confidential informant mentioned Collins by name and referred to Langham by description. Detective Smith further testified that the confidential informant had provided information in the past that had led to arrests and that the confidential informant had been in the house within the previous forty-eight hours and had seen drugs there at that time. Detective Smith testified that he conducted surveillance to verify the information. After he verified the information, he sought and obtained a search warrant from a magistrate.

■ We must first determine whether the evidence is testimonial or non-testimonial. *Crawford v. Washington,* 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); *Wells v. State,* 241 S.W.3d 172, 175 (Tex.App.–Eastland 2007, pet. ref'd). The Supreme Court has not provided a comprehensive definition to be used when determining whether statements are testimonial. *Crawford,* 541 U.S. at 53–54, 124 S.Ct. 1354; *Wells,* 241 S.W.3d at 174–75. Testimonial statements of a person who does not appear at trial are not admissible unless the person was unavailable to testify and the defendant had a prior opportunity to cross-examine that person. *Crawford,* 541 U.S. at 53–54, 124 S.Ct. 1354. We review the issue de novo. *Lollis v. State,* 232 S.W.3d 803, 806 (Tex.App.–Texarkana 2007, pet. ref'd); *Wells,* 241 S.W.3d at 175.

■ The Sixth Amendment to the Constitution of the United States contains the confrontation clause and provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." The confrontation clause applies to both federal and state prosecutions. *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Witnesses are those who "bear testimony," meaning, "typically [a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" *Crawford,* 541 U.S. at 51, 124 S.Ct. 1354. Thus, the confrontation clause applies only to those hearsay statements that are testimonial. *See Crawford,* 541 U.S. at 51, 124 S.Ct. 1354; *Arroyo v. State,* 239 S.W.3d 282 (Tex.App.–Tyler 2007, pet. ref'd). When we determine whether a statement is testimonial, we focus on the purpose of the statement and not upon the expectations of the declarant. *Davis v. Washington,* 547 U.S. 813, 822–23, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). Generally, if the primary purpose behind the statement is to establish or prove events of the past that are potentially relevant to later criminal prosecution, then the statement is testimonial. *Id.* We look to the objective purpose of the interview or the interrogation. *De La Paz v. State,* —— S.W.3d ——, No. PD–1168–07, 2008 WL 2437648 (Tex.Crim.App. June 18, 2008). The person giving the information is bearing testimony. *Id.* Otherwise, the testimony is non-testimonial and the confrontation clause is not implicated.

Here, the statements made by the confidential informant were not given to prove events of the past in a criminal prosecution in relation to those past events. The confidential informant was not "bearing testimony." The confidential informant was not making "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact" necessary to the criminal prosecution in this case. *Crawford,* 541 U.S. at 51, 124 S.Ct. 1354. The primary purpose in making the statement was not to get or give testimony or its functional equivalent. *Id.; Lollis,* 232 S.W.3d at 809. The confidential informant was not acting as a witness. There was no emergency as in *Davis,* but the absence of an emergency does not make the statements testimonial. *Lollis,* 232 S.W.3d at 810. In *Davis,* although there was an emergency, the statements were made by one who was not acting as a witness. Here, the primary purpose behind the statements of the confidential informant was not to provide testimony but to provide information to Detective Smith in order that he could obtain a search warrant.

Langham cites us to cases in support of her position that were decided prior to *Crawford* and *Davis* and are, thus, distinguishable. *See, e.g., Hill v. State,* 817 S.W.2d 816 (Tex.App.–Eastland 1991, pet. ref'd).

While not without limits, we hold that the trial court was correct under these facts in allowing Detective Smith to testify about the information given to him by the confidential informant because it was non-testimonial. *See Parker v. State*, 192 S.W.3d 801, 807 (Tex.App.–Houston [1st Dist.] 2006, pet. ref'd). We have so held on another occasion in *Baca v. State*, No. 11–04–00021–CR, 2006 WL 1495022 (Tex. App.–Eastland June 1, 2006, no pet.) (not designated for publication); *see also Woods v. State*, 152 S.W.3d 105, 113–14 (Tex.Crim.App.2004); *Ford v. State*, 179 S.W.3d 203, 208 (Tex.App.–Houston [14th Dist.] 2005, pet. ref'd).

Moreover, even if the trial court erred in admitting the evidence, the error would not be reversible because beyond a reasonable doubt the error did not contribute to the conviction or punishment. Tex.R.App. P. 44.2(a). Without repeating the evidence we have already outlined earlier in this opinion, that evidence is legally and factually sufficient, even in the absence of statements of the confidential informant, to support the finding of guilt. Appellant's third issue on appeal is overruled.

The judgment of the trial court is affirmed.