**Opinion filed December 2, 2010**



In The

# Eleventh Court of Appeals

_____

## No. 11-07-00027-CR

_____

## PAMELA SHAREKA LANGHAM, Appellant

## V.

## STATE OF TEXAS, Appellee

On Appeal from the 104th District Court

Taylor County, Texas

Trial Court Cause No. 15857B

## O P I N I O N   O N   R E M A N D

The trial court convicted Pamela Shareka Langham of the offense of possession of less than one gram of cocaine, assessed her punishment at confinement in a state jail facility for eighteen months, but suspended the imposition of the sentence and placed her on community supervision for three years. On original submission, we affirmed the trial court's judgment.[1] On appellant's petition for discretionary review, the Texas Court of Criminal Appeals determined that the confidential informant's statement was testimonial and that its admission violated

---

[1]*Langham v. State*, 269 S.W.3d 108 (Tex. App.—Eastland 2008), *rev'd*, 305 S.W.3d 568 (Tex. Crim. App. 2010).

appellant's Sixth Amendment right, as construed by *Crawford v. Washington*, 541 U.S. 36 (2004), to confront the witnesses against her. *Langham v. State*, 305 S.W.3d 568 (Tex. Crim. App. 2010). The court reversed our original judgment and remanded the cause to this court to perform a proper harm analysis. *Id.* at 583. On remand, we find the error to be harmless and again affirm.

The error in this case is constitutional and, therefore, subject to a constitutional harm analysis. *Id.* at 582; *see* TEX. R. APP. P. 44.2(a); *Neal v. State*, 256 S.W.3d 264, 284 (Tex. Crim. App. 2008). Under this analysis, reversal is required unless the reviewing court can determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. *Chapman v. California*, 386 U.S. 18, 24 (1967); Rule 44.2(a). If there is a reasonable likelihood that the error materially affected the jury's deliberations, the error was not harmless. *Jones v. State*, 119 S.W.3d 766, 777 (Tex. Crim. App. 2003). We must "calculate, as nearly as possible, the probable impact of the error on the jury in light of the other evidence." *Neal*, 256 S.W.3d at 284. We must consider any factor revealed by the record that may shed light on the probable impact of the trial court's error on the minds of average jurors. *Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007).

The Court of Criminal Appeals has declared the following factors to be relevant in determining whether *Crawford* error is harmless: (1) the importance of the out-of-court statement to the State's case; (2) whether the out-of-court statement was cumulative of other evidence; (3) the presence or absence of evidence corroborating or contradicting the out-of-court statement on material points; and (4) the overall strength of the prosecution's case. *Langham*, 305 S.W.3d at 582; *Scott v. State*, 227 S.W.3d 670, 690 (Tex. Crim. App. 2007). The emphasis of an analysis for constitutional harm should not be on the propriety of the outcome of the trial, i.e., whether the jury verdict was supported by the evidence.

> Instead, the question is the likelihood that the constitutional error was actually a contributing factor in the jury's deliberations in arriving at that verdict–whether, in other words, the error adversely affected the integrity of the process leading to the conviction. In reaching that decision, the reviewing court may also consider, in addition to the factors listed above, *inter alia*, the source and nature of the error, to what extent, if any, it was emphasized by the State, and how weighty the jury may have found the erroneously admitted evidence to be compared to the balance of the evidence with respect to the element or defensive issue to which it is relevant. With these considerations in mind, the reviewing court must ask itself whether there is a reasonable possibility that the *Crawford* error moved the jury

from a state of non-persuasion to one of persuasion on a particular issue. Ultimately, after considering these various factors, the reviewing court must be able to declare itself satisfied, to a level of confidence beyond a reasonable doubt, that the error did not contribute to the conviction before it can affirm it.

*Langham*, 305 S.W.3d at 582 (quoting *Scott*, 227 S.W.3d at 690-91) (footnotes and quotation marks omitted in original).

The out-of-court statements of the confidential informant were offered during the testimony of Detective Rodney Smith. After discussing the general nature of receiving and corroborating tips from confidential informants, Detective Smith testified, over appellant's objections, regarding the content of the information received from the confidential informant in this case. He stated:

[I]t was a residence that was located on Encino, 5301 Encino; that that particular residence was being used as a place where drugs were trafficked, were being sold, becoming -- the specific drug was mentioned as being cocaine, crack cocaine, and one individual was given to me by name, and then others who were there at the residence while this was taking place were also given to me by description.

. . . .

The -- several people were living at the residence. There were Charlie Collins, that I have already mentioned, is at that time or was at that time operating a crack cocaine distribution business out of the house, had a girlfriend, a live-in girlfriend or someone that was living there at the time with him that was also involved. And then there were some other people, two other people that were also residents of the house, or that were there in care, custody, control of the house as well.

The out-of-court statements were not particularly important to the State's case, were cumulative of other evidence, were corroborated on material points, and were only contradicted in part by appellant, whose testimony the trial court found to be incredible. Excluding the out-of-court statements, the evidence showed that Collins and appellant lived in the residence at 5301 Encino, as did at least one other couple. When the search warrant was executed, Collins and appellant were contacted in the main bedroom of the residence. Another couple, the Kilcreases, were in a different bedroom. Appellant informed the officers that she had a gun under her mattress, and officers then seized the semiautomatic handgun from under the mattress of the bedroom that had been occupied by appellant and Collins. The officers then searched the residence.

3

In the kitchen area, they found a ceramic plate that contained "a good quantity of powder traces," a razor blade near the plate, and a set of electronic scales capable of weighing small portions in grams. A "powder substance" could be seen on the weighing portion of the scales. No food residue was on the scales. Detective Smith testified that these items were significant because they indicated that "crack cocaine" was being "cut," weighed, and "sold." In Collins and appellant's bedroom, officers found a metal safe under the bed. Appellant and Collins both told Detective Smith that the safe belonged to them and that the key was located on a table in the bedroom. Detective Smith opened the safe and saw a noticeable amount of white powder along the edges on the inside of the safe. A pendant, two plastic bags of coins, and currency in the amount of $775 were also in the safe. Appellant told Detective Smith that the money and the safe belonged to her. The safe, still containing powder, was shown to the jury. Trace amounts of powder from the safe and from the plate were analyzed; both contained cocaine. Powder scraped from the scales was introduced into evidence, but it had not been analyzed.

Appellant admitted that she lived with Collins and others at that residence. She also admitted that she had opened the safe the night before the warrant was executed. Appellant testified that she was not aware of any cocaine anywhere in the house; that she had not seen that plate in the pantry or the razor blade above the pantry door; that she had not seen any powder residue in the safe, on the plate, or on the scales; and that she had purchased the scales because she was "a cooker" and needed the scales to measure flour. With respect to appellant's testimony, the trial court subsequently made this observation:

> Ms. Langham, I want you to understand that -- that your statement from the witness stand during the trial was about as disappointing as I can recall because I think that you, with full intent and not doing a very good job, didn't tell me the truth. And I'm not sure I've had anybody as blatantly do that as you did.

Daniel Kilcrease testified that he lived at the residence with Collins and appellant at the time the search warrant was executed. His testimony was cumulative of the confidential informant's statements. Kilcrease, who made it clear that he had no desire to testify at appellant's trial, testified under subpoena that drugs were being sold out of that house, that appellant had been in close proximity to those drugs, that appellant had seen the drugs being cut and sold, and that appellant made "runs" for Collins.

Kilcrease's testimony echoed the erroneously admitted statements and made two damaging additions: that appellant had seen the drugs being cut and sold and that she had made

4

runs for Collins. It was undisputed that appellant lived at the residence and that she had exercised care, custody, and control over the safe. The safe, which was displayed to the jury, contained visible amounts of cocaine. The confidential informant's statements were mentioned in closing argument only to the extent that the confidential informant had been in the residence and had seen four people, including Collins and his girlfriend, and a quantity of cocaine. Additionally, at the punishment phase of trial, the trial court stated, "I'm only sentencing you to the trace amount, not based on the other information."

After carefully reviewing the record, we hold that the trial court's error in admitting the informant's out-of-court statements did not contribute to appellant's conviction or punishment and was harmless beyond a reasonable doubt. The statements made by the confidential informant were cumulative of other evidence and were corroborated on material points. The statements were not important to the State's case and were not emphasized by the State. The sole issue on remand is overruled.

The judgment of the trial court is affirmed.


JIM R. WRIGHT
CHIEF JUSTICE


December 2, 2010

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.