Opinion filed December 2,
2010

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-07-00027-CR 

                                                    __________

 

                        PAMELA
SHAREKA LANGHAM, Appellant

 

                                                             V.

 

                                      STATE
OF TEXAS, Appellee



 

                                   On
Appeal from the 104th District Court

 

                                                            Taylor
County, Texas

 

                                                    Trial
Court Cause No. 15857B

 



 

                                                O
P I N I O N   O N   R E M A N D            

 

            The
trial court convicted Pamela Shareka Langham of the offense of possession of
less than one gram of cocaine, assessed her punishment at confinement in a
state jail facility for eighteen months, but suspended the imposition of the
sentence and placed her on community supervision for three years.  On original
submission, we affirmed the trial court’s judgment.[1] 
On appellant’s petition for discretionary review, the Texas Court of Criminal
Appeals determined that the confidential informant’s statement was testimonial
and that its admission violated appellant’s Sixth Amendment right, as construed
by Crawford v. Washington, 541 U.S. 36 (2004), to confront the witnesses
against her.  Langham v. State, 305 S.W.3d 568 (Tex. Crim. App. 2010). 
The court reversed our original judgment and remanded the cause to this court
to perform a proper harm analysis.  Id. at 583.  On remand, we find the
error to be harmless and again affirm.  

The
error in this case is constitutional and, therefore, subject to a
constitutional harm analysis.  Id. at 582; see Tex. R. App. P. 44.2(a); Neal v.
State, 256 S.W.3d 264, 284 (Tex. Crim. App. 2008).  Under this analysis, reversal
is required unless the reviewing court can determine beyond a reasonable doubt
that the error did not contribute to the conviction or punishment.  Chapman
v. California, 386 U.S. 18, 24 (1967); Rule 44.2(a).  If there is a
reasonable likelihood that the error materially affected the jury’s
deliberations, the error was not harmless.  Jones v. State, 119 S.W.3d
766, 777 (Tex. Crim. App. 2003).  We must “calculate, as nearly as possible,
the probable impact of the error on the jury in light of the other evidence.”  Neal,
256 S.W.3d at 284.  We must consider any factor revealed by the record that may
shed light on the probable impact of the trial court’s error on the minds of
average jurors.  Clay v. State, 240 S.W.3d 895, 904 (Tex. Crim. App.
2007).  

The
Court of Criminal Appeals has declared the following factors to be relevant in
determining whether Crawford error is harmless:  (1) the importance of
the out-of-court statement to the State’s case; (2) whether the out-of-court
statement was cumulative of other evidence; (3) the presence or absence of
evidence corroborating or contradicting the out-of-court statement on material
points; and (4) the overall strength of the prosecution’s case.  Langham,
305 S.W.3d at 582; Scott v. State, 227 S.W.3d 670, 690 (Tex. Crim. App.
2007).  The emphasis of an analysis for constitutional harm should not be on
the propriety of the outcome of the trial, i.e., whether the jury verdict was
supported by the evidence.  

Instead, the
question is the likelihood that the constitutional error was actually a
contributing factor in the jury’s deliberations in arriving at that verdict–whether,
in other words, the error adversely affected the integrity of the process
leading to the conviction.  In reaching that decision, the reviewing court may
also consider, in addition to the factors listed above, inter alia, the
source and nature of the error, to what extent, if any, it was emphasized by
the State, and how weighty the jury may have found the erroneously admitted
evidence to be compared to the balance of the evidence with respect to the
element or defensive issue to which it is relevant.  With these considerations
in mind, the reviewing court must ask itself whether there is a reasonable
possibility that the Crawford error moved the jury from a state of
non-persuasion to one of persuasion on a particular issue.  Ultimately, after
considering these various factors, the reviewing court must be able to declare
itself satisfied, to a level of confidence beyond a reasonable doubt, that the
error did not contribute to the conviction before it can affirm it.  

 

Langham, 305
S.W.3d at 582 (quoting Scott, 227 S.W.3d at 690-91) (footnotes and
quotation marks omitted in original).  

            The
out-of-court statements of the confidential informant were offered during the
testimony of Detective Rodney Smith.  After discussing the general nature of
receiving and corroborating tips from confidential informants, Detective Smith
testified, over appellant’s objections, regarding the content of the
information received from the confidential informant in this case.  He stated:

[I]t was a residence
that was located on Encino, 5301 Encino; that that particular residence was
being used as a place where drugs were trafficked, were being sold, becoming --
the specific drug was mentioned as being cocaine, crack cocaine, and one
individual was given to me by name, and then others who were there at the residence
while this was taking place were also given to me by description. 

 

. .
. .

 

            The --
several people were living at the residence.  There were Charlie Collins, that
I have already mentioned, is at that time or was at that time operating a crack
cocaine distribution business out of the house, had a girlfriend, a live-in
girlfriend or someone that was living there at the time with him that was also
involved.  And then there were some other people, two other people that were
also residents of the house, or that were there in care, custody, control of
the house as well.

 

The
out-of-court statements were not particularly important to the State’s case,
were cumulative of other evidence, were corroborated on material points, and
were only contradicted in part by appellant, whose testimony the trial court
found to be incredible.  Excluding the out-of-court statements, the evidence
showed that Collins and appellant lived in the residence at 5301 Encino, as did
at least one other couple.  When the search warrant was executed, Collins and
appellant were contacted in the main bedroom of the residence.  Another couple,
the Kilcreases, were in a different bedroom.   Appellant informed the officers
that she had a gun under her mattress, and officers then seized the
semiautomatic handgun from under the mattress of the bedroom that had been
occupied by appellant and Collins.  The officers then searched the residence.  

In
the kitchen area, they found a ceramic plate that contained “a good quantity of
powder traces,” a razor blade near the plate, and a set of electronic scales
capable of weighing small portions in grams.  A “powder substance” could be
seen on the weighing portion of the scales.  No food residue was on the scales. 
Detective Smith testified that these items were significant because they
indicated that “crack cocaine” was being “cut,” weighed, and “sold.”  In Collins
and appellant’s bedroom, officers found a metal safe under the bed.  Appellant
and Collins both told Detective Smith that the safe belonged to them and that
the key was located on a table in the bedroom.  Detective Smith opened the safe
and saw a noticeable amount of white powder along the edges on the inside of
the safe.  A pendant, two plastic bags of coins, and currency in the amount of
$775 were also in the safe.  Appellant told Detective Smith that the money and
the safe belonged to her.  The safe, still containing powder, was shown to the
jury.  Trace amounts of powder from the safe and from the plate were analyzed;
both contained cocaine.  Powder scraped from the scales was introduced into
evidence, but it had not been analyzed.

Appellant
admitted that she lived with Collins and others at that residence.  She also
admitted that she had opened the safe the night before the warrant was
executed.  Appellant testified that she was not aware of any cocaine anywhere
in the house; that she had not seen that plate in the pantry or the razor blade
above the pantry door; that she had not seen any powder residue in the safe, on
the plate, or on the scales; and that she had purchased the scales because she
was “a cooker” and needed the scales to measure flour.  With respect to
appellant’s testimony, the trial court subsequently made this observation:

Ms.
Langham, I want you to understand that -- that your statement from the witness
stand during the trial was about as disappointing as I can recall because I
think that you, with full intent and not doing a very good job, didn’t tell me
the truth.  And I’m not sure I’ve had anybody as blatantly do that as you did.

 

            Daniel
Kilcrease testified that he lived at the residence with Collins and appellant
at the time the search warrant was executed.  His testimony was cumulative of
the confidential informant’s statements.  Kilcrease, who made it clear that he
had no desire to testify at appellant’s trial, testified under subpoena that
drugs were being sold out of that house, that appellant had been in close
proximity to those drugs, that appellant had seen the drugs being cut and sold,
and that appellant made “runs” for Collins.

            Kilcrease’s
testimony echoed the erroneously admitted statements and made two damaging
additions:  that appellant had seen the drugs being cut and sold and that she
had made runs for Collins.  It was undisputed that appellant lived at the
residence and that she had exercised care, custody, and control over the safe. 
The safe, which was displayed to the jury, contained visible amounts of cocaine. 
The confidential informant’s statements were mentioned in closing argument only
to the extent that the confidential informant had been in the residence and had
seen four people, including Collins and his girlfriend, and a quantity of
cocaine. Additionally, at the punishment phase of trial, the trial court
stated, “I’m only sentencing you to the trace amount, not based on the other
information.” 

After
carefully reviewing the record, we hold that the trial court’s error in
admitting the informant’s out-of-court statements did not contribute to
appellant’s conviction or punishment and was harmless beyond a reasonable
doubt.  The statements made by the confidential informant were cumulative of
other evidence and were corroborated on material points.  The statements were
not important to the State’s case and were not emphasized by the State.  The
sole issue on remand is overruled.  

            The
judgment of the trial court is affirmed.  

 

 

                                                                                                JIM
R. WRIGHT

                                                                                                CHIEF
JUSTICE

 

December 2, 2010

Publish.  See
Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









                [1]Langham v. State,
269 S.W.3d 108 (Tex. App.—Eastland 2008), rev’d, 305 S.W.3d 568 (Tex.
Crim. App. 2010).