

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| SERGIO HERRERA, | § | No. 08-11-00193-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 243rd District Court |
| THE STATE OF TEXAS, | § | |
| | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC# 20100D00593) |
| | § | |

**O P I N I O N**

A jury convicted Sergio Herrera, Appellant, of aggravated sexual assault of an elderly individual, and assessed punishment at twenty-three years' imprisonment. In three issues on appeal, Appellant complains of (1) the admission of statements the victim made to a sexual-assault nurse examiner and a psychologist, (2) the admission of Appellant's recorded statements to police, and (3) the admission of those portions of his recorded statements invoking his right to counsel. For the following reasons, we affirm.

**BACKGROUND**

Because Appellant does not challenge the sufficiency of the evidence to support his

conviction, only a brief recitation of the facts is necessary. On September 17, 2009, City of El Paso Police Detectives Deanne Hicks and Jimmy Aguirre arrested Appellant pursuant to an arrest warrant[1] for the aggravated sexual assault of Joyce Stautzenberger (hereinafter J.S.), an eighty-five-year-old woman.[2] While Appellant was being transported to the police station, Appellant was asked to read aloud a card containing his *Miranda*[3] warnings. Appellant complied and then signed the card. During this time, Appellant was not questioned by police.

At the police station, after Appellant agreed to give a recorded statement, he was again asked to read aloud a *Miranda* warning card. Appellant read the *Miranda* warning card for the second time and told detectives that he wanted to know what the allegations were before deciding whether or not to obtain the services of an attorney. After the allegations were explained to him, Appellant continued the interview and denied having any sexual contact with J.S. At the end of the interview, Appellant invoked his right to counsel and the detectives refrained from further questioning. Appellant was then placed in a holding cell while the booking paperwork was completed.

While in the holding cell, Appellant signaled to Detective Aguirre and stated that he had been embarrassed by the presence of the female detective, but he "wished to plead guilty to consensual sex . . . ." Prior to giving a second recorded statement, Appellant again read aloud and signed a *Miranda* warning card. Appellant told Detective Aguirre that he understood his rights and was willing to speak to him.

Appellant was charged by indictment with the aggravated sexual assault of an elderly individual. *See* TEX. PENAL CODE ANN. § 22.021(a)(2)(A), (C) (West 2011). Prior to trial,

---

[1] Appellant was also arrested for outstanding traffic warrants.
[2] Shortly after the incident, J.S. was diagnosed with cancer and passed away.
[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Appellant moved to suppress the two recorded statements he gave to police claiming violations of articles 38.22 and 38.23 of the Code of Criminal Procedure and violations of his right to counsel. The trial court denied Appellant's motion to suppress and entered findings of fact and conclusions of law. At trial, Appellant pleaded not guilty to the alleged offense. The *Miranda* warning cards signed by Appellant and his recorded statements to police were admitted into evidence over the objections of Appellant.

## DISCUSSION

## CONFRONTATION RIGHTS

In Issue One, Appellant contends that his Sixth and Fourteenth Amendment rights were violated by the admission of statements made by J.S., who was unavailable for confrontation and cross-examination due to her death, to Kathleen Justice, a sexual-assault nurse examiner (SANE), and Diane Bryan, a clinical psychologist. Outside the presence of the jury, the State argued that J.S.'s statements were admissible under Rule 803(4) of the Texas Rules of Evidence. *See* TEX. R. EVID. 803(4) (providing that hearsay statements meeting the following criteria are not excluded by the hearsay rule: "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."). On appeal, Appellant argues that J.S.'s statements to Nurse Justice were not made for purposes of medical diagnosis and treatment, but were made for purposes of investigating a sexual assault allegation. Similarly, Appellant asserts that J.S.'s statements to Dr. Bryan do not fit any hearsay exception because Dr. Bryan counseled J.S. long after the alleged sexual assault occurred.

3

*Standard of Review and Applicable Law*

The Confrontation Clause of the Sixth Amendment provides that in all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses. *Langham v. State*, 305 S.W.3d 568, 575 (Tex.Crim.App. 2010); *see also* U.S. CONST. amend. VI. The Confrontation Clause is binding on the states under the Fourteenth Amendment. *Michigan v. Bryant*, 131 S.Ct. 1143, 1152, 179 L.Ed.2d 93 (2011). In *Crawford v. Washington*, the Supreme Court held that the Confrontation Clause bars out-of-court statements that are testimonial, unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. 541 U.S. 36, 59, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

The threshold inquiry for supposed Confrontation Clause violations is whether the admitted statements are testimonial or nontestimonial in nature. *Vinson v. State*, 252 S.W.3d 336, 338 (Tex.Crim.App. 2008); *Lollis v. State*, 232 S.W.3d 803, 805-06 (Tex.App. – Texarkana 2007, pet. ref'd). Whether a statement is testimonial or nontestimonial is a question of law that we review *de novo*. *Langham*, 305 S.W.3d at 576; *see also Wall v. State*, 184 S.W.3d 730, 742 (Tex.Crim.App. 2006). Statements are testimonial if "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). When out-of-court statements in the context of an interview are made primarily for the purpose of medical diagnosis and treatment, they are not testimonial. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 312 n.2, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009) (medical records created for purposes of treatment are not testimonial within the meaning of *Crawford*); *Berkley v. State*, 298 S.W.3d 712, 715 (Tex.App. – San Antonio 2009, pet. ref'd) (holding that SANE's report was

4

nontestimonial where State presented evidence that purpose of report was to render proper medical diagnosis and treatment).

It appears to be undisputed that Appellant did not have a prior opportunity to cross-examine J.S. Thus, we must determine whether J.S.'s statements were testimonial or non-testimonial in order to decide whether Appellant's confrontation rights were violated.

*Nurse Justice's Testimony*

At trial, Nurse Justice testified that she was employed by Sierra Medical Center. She further testified that she was not aligned with law enforcement and was not biased in favor of the prosecution. Nurse Justice explained that a SANE exam is performed to evaluate and treat the victim. She explained that as part of the SANE exam which is documented in a medical record, she obtains a history from the patient which includes a history of allergies, medications, illnesses, surgeries, what happened to the patient, where it happened, when it happened, and whether the patient was injured or in any pain. The purpose of obtaining a patient history is to evaluate the patient, provide care, and formulate a diagnosis. Nurse Justice examined J.S. at the hospital the day after the alleged sexual assault occurred. At trial, she identified and explained the medical records relating to J.S.'s SANE exam. According to Nurse Justice, J.S. an eighty-five-year-old resident of an assisted living facility, reported that the previous night, a male had entered her room, made her lay down on the bed, and raped her despite her protests for him to stop. Nurse Justice observed redness and tears inside J.S.'s genitalia and testified that J.S.'s injuries were consistent with sexual assault. The records from Sierra Medical Center and Nurse Justice's testimony regarding J.S.'s statements were admitted in evidence over Appellant's objections.

5

*Dr. Bryan's Testimony*

Dr. Bryan testified that she was contacted by J.S's daughter regarding her mother.[4]   Dr. Bryan explained that in order to treat patients for intervention and trauma, she has to know what happened to them in order to know where to take the treatment to and to know what to do with the patients.   After two extensive sessions with J.S., Dr. Bryan diagnosed J.S. with Posttraumatic Stress Syndrome (PTSD).   The root cause of J.S.'s PTSD was the rape.   J.S. told Dr. Bryan that a man, who she later recognized as someone who had provided physical therapy to her at another facility, came into her apartment, threw her on the bed, took off her clothes, and raped her.   Dr. Bryan worked with J.S. to detox her of the trauma from the rape.   Dr. Bryan's records and testimony regarding J.S.'s statements were admitted over Appellant's objections.

We conclude that the records and testimony from Nurse Justice and Dr. Bryan did not violate Appellant's confrontation rights because J.S.'s statements were not testimonial, but rather her statements were made for medical diagnosis and treatment.   The primary purpose of the statements made to Nurse Justice and the SANE exam were to allow Nurse Justice to evaluate J.S., formulate a diagnosis, and provide care.   After Nurse Justice obtained J.S.'s history, she was able to administer the appropriate antibiotic for treatment of possible sexually-transmitted diseases.   Similarly, Dr. Bryan acquired J.S.'s history for purposes of treating her for intervention and trauma.   With the information J.S. provided to Dr. Bryan during their counseling sessions, Dr. Bryan was able to diagnosis and treat J.S. for PTSD.

The records and statements J.S. made to Nurse Justice and Dr. Bryan were made with a primary purpose of medical diagnosis and treatment, and not criminal investigation thus, they are

---

[4]  Karen Meister, J.S.'s daughter, testified that after the sexual assault, her mother was unhappy and withdrawn. Meister hired Dr. Bryan to help her mother.

6

nontestimonial in nature. *See Melendez-Diaz*, 557 U.S. at 312 n.2; *Berkley*, 298 S.W.3d at 715; *see also Lollis*, 232 S.W.3d at 808-10 (finding statements made by children to counselor were nontestimonal because statements were made during course of treatment for behavioral problems and abuse issues). Accordingly, we conclude that the trial court did not violate Appellant's confrontation rights by admitting the complained-of evidence. *See Lollis*, 232 S.W.3d at 809-10; *see also Morrison v. State*, No. 2-05-443-CR, 2007 WL 614143, at *4 (Tex.App. – Fort Worth Mar. 1, 2007, pet. ref'd) (mem. op.) (not designated for publication) (child's statements to SANE during exam held to be nontestimonial because purpose of SANE exam was to ascertain whether child had been sexually assaulted and needed treatment). Issue One is overruled.

## APPELLANT'S RECORDED STATEMENTS TO POLICE

In Issues Two and Three, Appellant challenges the admission of his recorded statements to police. In Issue Two, Appellant contends that the trial court erred by admitting the two recorded statements he made to police because the State failed to establish that he voluntarily waived his rights as required by article 38.22 of the Code of Criminal Procedure. In Issue Three, Appellant asserts that he was deprived of a fair trial because the trial court admitted his invocation of the right to counsel.

### *Standard of Review*

We review a trial court's ruling on a motion to suppress using the bifurcated standard articulated in *Guzman v. State,* 955 S.W.2d 85 (Tex.Crim.App. 1997). *See Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App. 2000); *Krug v. State*, 86 S.W.3d 764, 765 (Tex.App. – El Paso 2002, pet. ref'd). We do not engage in our own factual review because at a suppression hearing, the trial judge is the sole trier of fact and judge of the credibility of the

7

witnesses and the weight to be given to their testimony. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App.2000); *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990). We give almost total deference to the trial court's ruling on (1) questions of historical fact and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex.Crim.App. 2002); *Best v. State*, 118 S.W.3d 857, 861-62 (Tex.App. – Fort Worth 2003, no pet.). We review *de novo* a trial court's rulings on mixed questions of law and fact if they do not turn on the credibility and demeanor of witnesses. *Johnson*, 68 S.W.3d at 652–53. If the trial court's ruling on the admissibility of a custodial statement turns on an evaluation of credibility and demeanor, we are not at liberty to disturb any finding which is supported by the record. *See Dewberry v. State*, 4 S.W.3d 735, 747-48 (Tex.Crim.App. 1999). Generally, we only consider the evidence adduced at the suppression hearing; however, where, as here, the parties relitigate the suppression issue at the trial on the merits, we consider all the evidence, from both the pretrial hearing and the trial, in our review of the trial court's ruling. *See Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex.Crim.App. 2007).

**Article 38.22**

In Issue Two, Appellant argues that because the record before us is devoid of an express waiver of Appellant's rights, the State failed to establish that Appellant knowingly, intelligently, and voluntarily waived his rights. Article 38.22 proscribes the admissibility of oral statements made during custodial interrogation unless (1) those statements were recorded and (2) prior to making the statements but during the recording, the accused was warned of his rights and knowingly, intelligently, and voluntarily waived those rights. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3 (West 2005). Those warnings include that:

(1) [the accused] has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

(2) any statement he makes may be used as evidence against him in court;

(3) he has the right to have a lawyer present to advise him prior to and during any questioning;

(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

(5) he has the right to terminate the interview at any time[.]

*Id*. at 38.22, § 2 (West 2005).

In *Joseph v. State*, the Court of Criminal Appeals reiterated "'that neither a written nor an oral express waiver is required'" before a statement is admissible under the mandates of article 38.22 of the Code of Criminal Procedure. 309 S.W.3d 20, 24 (Tex.Crim.App. 2010) (quoting *Watson v. State*, 762 S.W.2d 591, 601 (Tex.Crim.App. 1988)); *see Barefield v. State*, 784 S.W.2d 38, 40-41 (Tex.Crim.App. 1989) (noting that the oral confession statute does not require an "express verbal statement from an accused that he waives his rights prior to giving the statement"), *overruled on other grounds, Zimmerman v. State*, 860 S.W.2d 89, 94 (Tex.Crim.App. 1993); *State v. Oliver*, 29 S.W.3d 190, 192 (Tex.App. – San Antonio 2000, pet. ref'd) (noting that there is no "additional language . . . required before a trial court could infer the defendant had waived his rights pursuant to art. 38.22"). Rather, that waiver may simply be "'inferred from the actions and words of the person interrogated.'" *Joseph*, 309 S.W.3d at 24-25 (quoting *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979)). But that waiver must still be knowingly, intelligently, and voluntarily made. *Id*. We look at the totality of the circumstances in reaching the voluntariness of a confession. *See Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986); *Barefield*, 784 S.W.2d at

9

41. In reviewing the totality of the circumstances, we may consider the defendant's background, experience, and conduct. *Joseph*, 309 S.W.3d at 25 (citing *Fare v. Michael C.*, 442 U.S. 707, 725, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979)).

We are not persuaded by Appellant's argument that in light of the absence of an express waiver of his rights, the State failed to establish that Appellant knowingly, intelligently, and voluntarily waived his rights because, as noted above, an explicit waiver of rights is not required. *See id.* at 24; *Oliver*, 29 S.W.3d at 192. The record shows that Appellant read his *Miranda* warnings aloud from a card on three different occasions. While at the police station, Appellant agreed to give two recorded statements, and after reading his *Miranda* rights both times, he indicated that he understood his rights. At the suppression hearing, Detective Hicks testified that Appellant was not coerced or threatened into giving a statement and explained that after Appellant read his rights, Appellant continued speaking with the detectives.[5] At trial, Appellant testified that he read and signed the *Miranda* warnings card, and told the detectives that he understood his rights. However, he explained that he forgot to tell detectives that although he understood what he was reading, "[it was not] sinking in." Appellant also agreed that during his first recorded statement, he told the detectives that he wanted to know what the allegation against him was so that he could decide if he wanted to continue talking to them or if he wanted to get a lawyer. Appellant continued talking to the detectives and later terminated that first recorded interview by stating "if that's the allegation, then, you know, I don't have any other choice but to talk to a lawyer. Get me a lawyer." Detective Aguirre testified at both the suppression hearing and trial that after the termination of the first recorded interview, Appellant

---

[5] At trial, Detective Aguirre similarly testified that Appellant voluntarily agreed to give a recorded statement.

10

reinitiated contact with Detective Aguirre by motioning to him while Appellant was in the holding cell and told him that he wanted to plead guilty to consensual sex.

In its findings of fact and conclusion as to voluntariness, the trial court found that: Appellant read his rights aloud from a *Miranda* warning card while being transported to the police station and again during the first and second interviews; after the detectives explained the nature of the allegation to Appellant, Appellant answered all of the detectives' questions; at the end of the interview, Appellant invoked his right to counsel and all questioning ceased; Appellant later reinitiated contact with Detective Aguirre, provided a second statement in which he answered all of Detective Aguirre's questions, and admitted that he engaged in consensual sex with J.S. The trial court concluded that: (1) Appellant was under arrest and in custody when Appellant gave the two recorded statements to police, (2) Appellant intentionally, knowingly, and voluntarily waived his rights during the first and second statements, and (3) both statements made by Appellant complied with the provisions of article 38.22 of the Code of Criminal Procedure.

We conclude that the trial court's findings are supported by the record. In applying the appropriate standard of review to this case, we accord almost total deference to the trial court's determination regarding the credibility and demeanor of the witnesses. *See Johnson*, 68 S.W.3d at 652-53; *Best*, 118 S.W.3d at 861-62; *Oliver*, 29 S.W.3d at 191. Looking at the totality of the circumstances, we hold that the trial court did not err by concluding that Appellant knowingly, intelligently, and voluntarily waived his rights under article 38.22. *See Turner v. State*, 252 S.W.3d 571, 583 (Tex.App. – Houston [14th Dist.] 2008, pet. ref'd) (concluding defendant's rights were validly waived where he indicated he understood his rights and proceeded to answer

11

questions); *Hargrove v. State*, 162 S.W.3d 313, 318-19 (Tex.App. – Fort Worth 2005, pet. ref'd) (finding the defendant validly waived his rights despite a lack of explicit waiver); *Oliver*, 29 S.W.3d at 193 (defendant knowingly, intelligently, and voluntarily gave a statement, despite lack of explicit waiver, where he indicated he understood his rights and proceeded to discuss details of murder with police). Issue Two is overruled.

## Invocation of Appellant's Right to Counsel

In Issue Three, Appellant asserts that he was deprived of a fair trial because the trial court admitted his invocation of the right to counsel.

### *Right to Counsel*

Once a suspect invokes his right to counsel, interrogation must cease until counsel has been provided, or the accused himself initiates further communication. *Minnick v. Mississippi*, 498 U.S. 146, 151-52, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990); *Edwards v. Arizona*, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). A request for counsel must be unambiguous, meaning the suspect must "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis v. United States*, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). Not every mention of a lawyer is sufficient to invoke one's Fifth Amendment right to counsel during an interrogation. *State v. Gobert*, 275 S.W.3d 888, 892 (Tex.Crim.App. 2009). If the suspect's statement is not an unambiguous or unequivocal request for counsel, the police officers do not have to seek clarification or much less stop questioning the suspect. *Id*. Whether a suspect has unequivocally requested an attorney depends on whether he expressed a definite desire to speak to someone, and that person be an

12

attorney. *Dinkins v. State*, 894 S.W.2d 330, 352 (Tex.Crim.App. 1995). When reviewing alleged invocations of the right to counsel, we look at the totality of the circumstances surrounding the interrogation, as well as the alleged invocation, to determine whether a suspect's statement can be construed as an actual invocation of his right to counsel. *Dinkins*, 894 S.W.2d at 351; *Castillo v. State*, 742 S.W.2d 1, 4 (Tex.Crim.App. 1987).

The State cannot inform the jury that the accused invoked his constitutional rights because the jury can improperly consider the invocation as an inference of guilt. *Hardie v. State*, 807 S.W.2d 319, 322 (Tex.Crim.App. 1991). Nevertheless, where the suspect subsequently waives his previously invoked right, there is no error. *See Campbell v. State*, No. 04-08-00193-CR, 2009 WL 2265472, at *4 (Tex.App. – San Antonio July 29, 2009, pet. ref'd) (mem. op.) (not designated for publication) (holding trial court did not err by admitting appellant's recorded statement which included his initial invocation of the right to counsel where he later waived that right).

We first review the record to determine whether Appellant's comments were a clear and unequivocal invocation of his right to counsel. The record demonstrates that prior to Appellant's interrogation by Detectives Hicks and Aguirre, Appellant spoke to his spouse on his cell phone in the presence of the detectives. During this time, the recording system in the interview room was turned on and Appellant's cell phone conversation was recorded. While on the phone, Appellant asked his spouse to get information about legal prepay. After Appellant hung up the call, he commented: "Let me see if we can get a lawyer or something, because I don't like the way this is going." Afterwards, Appellant's cell phone rang and Appellant then asked his spouse to call the lawyer. The detectives commenced the interview by

13

having Appellant read a *Miranda* warning card aloud and asking him if he understood his rights. Appellant indicated that he understood his rights. At the suppression hearing, Detective Hicks testified that when she and Detective Aguirre first walked into the interview room, Appellant was on the phone and that was when he first mentioned an attorney. Appellant did not request an attorney at that time. According to Detective Hicks, Appellant did not invoke his right to counsel until the very end of the first recorded statement. On cross-examination, Detective Hicks stated that she heard Appellant make the "Let me see" statement, but explained that she did not consider that to be a request for an attorney. She stated that if Appellant had requested an attorney at that time, they would have stopped the interview. She further explained that Appellant did not request an attorney, but mentioned trying to obtain one.

At trial, on cross-examination, Detective Aguirre maintained that Appellant was not trying to obtain an attorney when he made the "Let me see" comment. He clarified that Appellant's statement was not directed to them, but rather Appellant was questioning himself as to whether he should get an attorney.

The State argues that the trial court did not err in admitting the statements Appellant made during his telephone conversation with his spouse because those statements did not constitute a clear and unequivocal invocation of his right to counsel. We agree. In *Dalton v. State*, the Austin Court of Appeals concluded that the appellant's statement to the police officer to ask or tell his friends to get him a lawyer was not an invocation of the right to counsel. 248 S.W.3d 866, 873 (Tex.App. – Austin 2008, pet. ref'd), *cert. denied*, 130 S.Ct. 555, 175 L.Ed.2d 386 (2009). The *Dalton* court held that, at most, the appellant's statement was an "equivocal and ambiguous statement that he might want the services of an attorney at some point." *Id.* Like

14

*Dalton*, Appellant's "Let me see" statement is not an unequivocal and unambiguous invocation of his right to counsel, but, at most, recounted Appellant's telephone conversation and indicated that he wanted to see if he could get an attorney at some point. *See id*. After Appellant made the statement, he answered his cell phone and asked his spouse to call the lawyer. Appellant then read his *Miranda* rights, indicated he understood them, and told the detectives that he wanted to know what the allegations were before deciding whether he wanted to get an attorney. In the context presented, Appellant's statement was ambiguous and equivocal and would not reasonably have been construed as a request for an attorney. *See Davis*, 512 U.S. at 459, 462 (holding suspect's statement, "Maybe I should talk to a lawyer," was not a request for an attorney); *Huckaby v. State*, No. 2-01-301-CR, 2003 WL 21235588, at *5 (Tex.App. – Fort Worth May 29, 2003, pet. ref'd) (not designated for publication) (concluding that the phrase "I will call my attorney" after appellant agreed to be photographed "was more an after-the-fact expression" of appellant's discomfort with being photographed and his desire not to speak further with police than an invocation of the right to an attorney).

A review of the totality of the circumstances surrounding the interrogation, the telephone conversation between Appellant and his spouse, and the comments Appellant made, indicate that Appellant did not clearly and unambiguously invoke his right to counsel. *See Dinkins*, 894 S.W.2d at 351.

Appellant also argues that the invocation of his right to counsel at the beginning of the first recorded statement and at the end of that same recording, were tantamount to post-arrest silence and that the admission of those recorded statements in evidence violated his due process rights. In *Garcia v. State*, the defendant argued that the trial court abused its discretion by

overruling his objection to the State's comments on his right to remain silence in violation of his Fifth Amendment right. 126 S.W.3d 921, 923-24 (Tex.Crim.App. 2004). The Court of Criminal Appeals rejected defendant's argument as "nonsensical" because he had "waived his post-arrest right to silence when he agreed to give a written statement to police after being warned of his constitutional rights." *Id*. at 924. In other words, a defendant's post-arrest silence cannot improperly be commented upon when defendant did not remain silent. *Salazar v. State*, 131 S.W.3d 210, 215 (Tex.App. – Fort Worth 2004, pet. ref'd).

Appellant's argument is based on the premise that he remained silent after invoking his constitutional rights. However, Appellant does not dispute that he voluntarily reinitiated contact with Detective Aguirre after he terminated the first interview. Because Appellant waived his rights by reinitiating contact with Detective Aguirre, the complained-of statements by Appellant were not tantamount to post-arrest silence. *See Garcia*, 126 S.W.3d at 924; *Salazar*, 131 S.W.3d at 215. The trial court's finding that following Appellant's invocation of his right to counsel at the end of the first recorded statement, Appellant reinitiated contact with Detective Aguirre and agreed to give a second recorded statement is supported by the record. Accordingly, we conclude that (1) Appellant did not clearly and unambiguously invoke the right to counsel at the beginning of the recorded statement, and (2) he later waived that right by reinitiating contact with Detective Aguirre. Thus, the trial court did not abuse its discretion in admitting Appellant's recorded statements. *See Torres v. State*, 71 S.W.3d 758, 760 (Tex.Crim.App. 2002) (we review trial court's decision to admit or exclude evidence for abuse of discretion); *Campbell*, 2009 WL 2265472, at *4. Issue Three is overruled.

16

**REFORMATION**

Finally, we note that the written judgment incorrectly indicates that Appellant pleaded "guilty" to charged offense. However, the record reflects that Appellant entered a plea of "not guilty" at trial. We have the authority to reform a judgment to make the record speak the truth when the matter has been called to its attention by any source. *See* TEX. R. APP. P. 43.2(b); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992). Further, we may act *sua sponte* to reform an incorrect judgment and may have a duty to do so. *Asberry v. State*, 813 S.W.2d 526, 530 (Tex.App. – Dallas 1991, pet. ref'd); *see French*, 830 S.W.2d at 609. Accordingly, we reform the judgment to reflect Appellant's plea of "not guilty" to the charged offense.

**CONCLUSION**

Having overruled Appellant's issues, we affirm the trial court's judgment as reformed.


GUADALUPE RIVERA, Justice

September 11, 2013

Before McClure, C.J., Rivera, and Antcliff, JJ.
Antcliff, J., not participating

(Do Not Publish)

17